Ernest R. CHAMBERS, Appellant,

v.

UNITED STATES, Appellee.

Martha L. HUBBARD, Appellant,

v.

UNITED STATES, Appellee.

Nos. 87–1368, 88–37.

District of Columbia Court of Appeals.

Argued May 4, 1989.

Decided Aug. 31, 1989.

David Carey Woll, Rockville, Md., appointed by this court, for appellant Chambers.

Walter S. Booth, Washington, D.C., appointed by this court, for appellant Hubbard.

Sharon M. Collins, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, and Elizabeth Trosman and James F. Rutherford, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and NEWMAN and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellants Chambers and Hubbard were jointly charged with distribution of cocaine and with possession of cocaine with intent to distribute it, both in violation of D.C. Code § 33–541(a)(1) (1988). Hubbard was convicted of distribution, but was acquitted of both possession with intent to distribute and the lesser included offense of simple possession, on which the jury was also instructed. Chambers was convicted of both offenses as charged.

■ Several claims of error are presented on appeal. Appellant Hubbard contends that her motion to dismiss the indictment, made after the government had completed its case in chief and renewed after trial, should have been granted. Hubbard also maintains that the trial court abused its discretion by prohibiting her from cross-examining a police detective about his prior testimony before the grand jury. Appellant Chambers argues that the trial court

erred in refusing to dismiss the indictment against Hubbard, and that this error was prejudicial to him. Chambers joins Hubbard in contending that the trial court erred in circumscribing Hubbard's cross-examination of the detective about his grand jury testimony, again asserting that this error prejudiced his defense. Chambers also contends that the evidence was insufficient to convict him of possession with intent to distribute. Finally, although he did not request an instruction on simple possession as a lesser included offense of possession with intent to distribute, Chambers maintains that the trial court erred in failing so to instruct the jury *sua sponte*. We reject all of these arguments and, with one exception,[1] affirm the convictions of both appellants.

I

One evening in September 1986, Officer Alfonso Walton of the Metropolitan Police, a member of the Narcotics Task Force, was working under cover in the area of 12th and U Streets, N.W., when appellant Hubbard walked past him saying, "Cane and powder cane." When she made the same remark again, Walton responded, "One time," and gave Hubbard a $20 bill whose serial number had been pre-recorded. Hubbard walked over to a man in a brown plaid shirt and exchanged the $20 bill for one $10 bill and two $5 bills.[2] Hubbard gave the two $5 bills to Walton, then turned to appellant Chambers, who was standing only a few feet away, and said, "One time." Chambers pulled from his pocket a tinfoil ball about the size of a

---

1. Chambers was also charged with possession of drug paraphernalia, a hypodermic syringe, in violation of D.C.Code § 33–550 (1988). The trial court granted Chambers' motion for judgment of acquittal on this charge because the government failed to prove one element of the offense, namely, the presence of "any quantity (including a trace) of a controlled substance" in the syringe seized from Chambers. The court then *reserved to itself* consideration of whether appellant was guilty of the lesser included paraphernalia offense defined in D.C.Code § 33–603(a) (1988), which does not require proof that any controlled substance is present, and in due course found Chambers guilty under the latter statute.

The court's withdrawal of the paraphernalia charge from the jury's consideration was error because, under our recent decision in *Simmons v. United States*, 554 A.2d 1167, 1171 (D.C.1989), only the jury—and not the court—could find appellant guilty of the lesser included offense. Chambers' conviction under section 33–603 must therefore be set aside. In fairness to the trial court, however, we note that this case was tried more than a year before *Simmons* was decided.

2. Officer Walton recognized the man who changed the $20 bill for Hubbard as Ditmar Becton, with whom he had engaged in a drug transaction earlier. Becton was arrested later that evening.

silver dollar, and from that ball he removed a smaller tinfoil package, which he handed to Walton. The transaction completed, Chambers and Hubbard started to walk down 12th Street toward T Street. Walton walked with them for almost a block, then headed for his own car to broadcast their descriptions to a waiting arrest team.

Detectives Norman Hill and Richard Skirchak, who were parked at 12th and T, heard Walton's broadcast. When Chambers and Hubbard passed by the cruiser in which the detectives were sitting, the detectives jumped out and arrested them. In the course of the arrest, Detective Hill saw a plastic vial containing a white powder on the ground just behind Hubbard's right foot. Detective Skirchak seized the vial, and a chemist later determined that the powder inside it was cocaine. From Chambers' pockets Skirchak recovered three tinfoil packets of cocaine, and in his socks Skirchak found a syringe and a bottle-top cooker used in preparing drugs for injection.[3]

Detective Hill was not asked on direct examination whether he had seen the drug transaction between appellants and Officer Walton. On cross-examination, however, counsel for Hubbard elicited from Hill that he had not seen it. Hubbard's counsel then sought to impeach Detective Hill with his grand jury testimony, in which Hill had reversed the roles of Chambers and Hubbard as described at trial by Officer Walton. Counsel asserted that he should be allowed to use the grand jury testimony given by Hill to impeach both Hill and Walton. The trial court refused to allow this line of cross-examination as to Officer Walton because there was no showing that Walton had ever adopted Hill's grand jury testimony.[4] The court prohibited counsel from using Hill's grand jury testimony to

"impeach" Hill on two grounds: first, because Hill had testified at trial that he had not seen the drug transaction at all, so that Hill had no personal knowledge of it, and second, because the proposed cross-examination would raise a collateral issue beyond the scope of direct. Although counsel for Hubbard vigorously sought to cross-examine Hill about his grand jury testimony, counsel for Chambers made no attempt to pursue this line of questioning, nor did he object to the limitations on cross-examination which the court imposed on Hubbard's counsel.

At the close of the government's case in chief, Hubbard's counsel moved to dismiss the indictment as to Hubbard, asserting that only Hill had testified before the grand jury about Hubbard's actions, and that his testimony was insufficient to support the indictment which the grand jury issued. Chambers' counsel did not join in this motion or make a similar motion, but he did move for judgment of acquittal on the charges of distribution and possession with intent to distribute. All of these motions were denied.[5]

In his own defense, Chambers testified that he had met his old friend Hubbard on a bus after coming from a methadone treatment center.[6] The two left the bus at 12th and U Streets, where Chambers bought three tinfoil packets of cocaine with his own money. Having made the purchase, Chambers said, he planned to share it with Hubbard once they reached an "oil joint" at 12th and T, and that "the only reason I spent that whole $30 [was] because I was going to share it with Ms. Hubbard." Chambers denied ever having seen Officer Walton.

Hubbard presented no evidence.

---

3. It was stipulated that the tinfoil packet sold to Officer Walton, the vial recovered from the ground near Hubbard's foot, and the three packets found in Chambers' possession all contained usable amounts of cocaine.

4. This ruling is not challenged on appeal.

5. Chambers' counsel renewed his motion for judgment of acquittal at the close of all the

evidence, but the court denied it. When Hubbard's counsel renewed his motion to dismiss the indictment at the end of trial, the court invited him to file a written post-trial motion. He did so, and the court thereafter denied the motion in a lengthy and well-reasoned opinion.

6. Chambers said that he had known Hubbard for approximately twenty years.

## II

■ Both appellants contend that the trial court erred in refusing to grant Hubbard's motion to dismiss the indictment. Their attack on the indictment is two-pronged. First, they maintain that because the indictment was based entirely on Detective Hill's hearsay testimony (reporting what he had been told by Officer Walton), it must be dismissed. This argument is utterly without merit. The notion that an indictment based entirely on hearsay should be dismissed has been explicitly rejected by the Supreme Court in *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Controlling District of Columbia case law is to the same effect. *E.g., Miles v. United States*, 483 A.2d 649, 654 (D.C.1984); *Coppedge v. United States*, 114 U.S. App.D.C. 79, 83, 311 F.2d 128, 132 (1962), *cert. denied*, 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701 (1963).

■ Appellants' second argument is that Detective Hill's testimony before the grand jury was insufficient to enable the grand jury to find probable cause and therefore insufficient to support the indictment. We reject this argument as well. "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello v. United States, supra*, 350 U.S. at 363, 76 S.Ct. at 408 (footnote omitted); *accord, e.g., Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 2377, 101 L.Ed.2d 228 (1988); *Lawn v. United States*, 355 U.S. 339, 349–350, 78 S.Ct. 311, 317–18, 2 L.Ed.2d 321 (1958); *Blango v. United States*, 335 A.2d 230, 234 (D.C. 1975); *United States v. Harley*, 221 U.S.

App.D.C. 69, 72, 682 F.2d 1018, 1021 (1982). "[S]o long as the Grand Jury itself is not 'tainted' in the sense that it was improperly constituted, or that its members were necessarily biased, its actions, if valid on their face, are valid." *Coppedge v. United States, supra*, 114 U.S. App.D.C. at 83, 311 F.2d at 132 (citation omitted).

■ Moreover, even assuming that the indictment was somehow flawed, neither appellant can make a showing of prejudice sufficient to require reversal. When a defendant has been found guilty of the charges in the indictment, "the petit jury's verdict [has] rendered harmless any conceivable error in the charging decision that might have flowed from the violation." *United States v. Mechanik*, 475 U.S. 66, 73, 106 S.Ct. 938, 943, 89 L.Ed.2d 50 (1986). Further, because Hubbard was acquitted of both possession with intent to distribute and the lesser included offense of possession, her challenge to that charge in the indictment is moot. There is no possibility that any infirmity in the charging stage had anything to do with the ultimate conviction of either appellant. Because appellants can point to no misconduct or bad faith by the government, they cannot demonstrate any meaningful prejudice, which is a prerequisite to reversal of their convictions. *See Bank of Nova Scotia, supra*, 108 S.Ct. at 2374–2375; *United States v. Mechanik, supra*, 475 U.S. at 71–73, 106 S.Ct. at 942–43.[7]

## III

■ Both appellants contend that the trial court erred in prohibiting cross-examination of Detective Hill by Hubbard's counsel about his testimony before the grand jury. We find no error in the trial court's ruling.[8] There is no dispute that Detective Hill, in

---

7. Because Chambers never challenged the sufficiency of the indictment in the trial court, we hold that he waived his right to do so. *See United States v. Harley, supra*, 221 U.S. App.D.C. at 72, 682 F.2d at 1021; Super.Ct.Crim.R. 12(b)(2). Even if his challenge were not waived, however, we would have to reject it on the merits along with that of Hubbard.

8. As with his challenge to the indictment, Chambers again attempts to win reversal on Hubbard's coattails: he objects on appeal to the

limitation of Hubbard's cross-examination, even though he did not join Hubbard in objecting at trial. Consequently, Chambers' claim of error on this issue must be disregarded unless he establishes plain error. *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc). Finding no error at all as to Hubbard, we reject Chambers' contention as well. We note, incidentally, that Chambers is represented by new counsel on appeal.

testifying before the grand jury, somehow reversed the roles played by Chambers and Hubbard as established by the evidence at trial. That is, in his grand jury testimony Detective Hill said that Chambers approached Officer Walton advertising cocaine, but that it was Hubbard who actually passed Walton the drugs. Officer Walton testified at trial, however, that Hubbard did the soliciting and that Chambers handed him the cocaine.

At trial Detective Hill did not testify at all during direct examination about the sale of cocaine to Officer Walton; rather, his testimony was confined to events within his personal knowledge, *i.e.*, his arrest of the two appellants and what was discovered in the search incident to the arrest. In fact, on cross-examination Detective Hill explicitly stated that he did not see the transaction between appellants and Officer Walton. Thus the trial court was correct in prohibiting Hubbard's counsel from delving into Detective Hill's grand jury testimony on cross-examination, both because counsel's proposed questioning went beyond the scope of direct and because the court's ruling ensured that Hill's testimony was confined to matters of which he had personal knowledge.[9]

It is axiomatic that trial courts have broad discretion to limit the scope of cross-examination to the subjects covered on direct. *E.g.*, *Brooks v. United States*, 536 A.2d 1091, 1093 (D.C.1988); *Wright v. United States*, 508 A.2d 915, 922 (D.C. 1986); *Holt v. United States*, 381 A.2d 1388, 1390 (D.C.1978); *Smith v. United States*, 330 A.2d 519, 520–521 (D.C.1974). In this case Detective Hill did not testify on direct examination about the transaction between Officer Walton and appellants, or about who passed what to whom. Consequently, he could not be impeached on either subject with his prior grand jury testimony, for there was nothing to impeach;

such cross-examination would have been plainly beyond the scope of direct. Further, nothing in the proposed cross-examination would have brought out "anything tending to contradict, modify, or explain the testimony given by [Hill] on his direct examination...." *Washington Ry. & Electric Co. v. Dittman*, 44 App.D.C. 89, 92 (1915). The fact that Detective Hill's credibility might have been damaged by showing that his grand jury testimony was in conflict with *Officer Walton's* trial testimony did not oblige the trial court to allow the desired "impeachment." *See Wright v. United States, supra*, 508 A.2d at 922–923 (trial court in its discretion may limit cross-examination even on matters affecting witness credibility).

■ In any event, even if the court's limitation of Hubbard's cross-examination was error, it was harmless. The unimpeached testimony of Officer Walton, who actually made the buy, and of Detective Skirchak, who recovered the other drugs, was sufficient in itself to convict both appellants. Detective Hill's testimony on direct examination was merely repetitive of what Walton and Skirchak had said, and "[a]ny prejudice from the trial court's exclusion of this particular impeachment, on the facts here, was minimal." *Wright v. United States, supra*, 508 A.2d at 923.

### IV

■ Chambers contends that the evidence at trial was insufficient to prove he possessed the three tinfoil packets of cocaine with the specific intent to distribute them, and that his motion for judgment of acquittal on the charge of possession with intent to distribute should have been granted. This contention is frivolous.

The standard by which we review the denial of a motion for judgment of acquittal is well settled. We examine the evidence, whether direct or circumstantial, in

9. Detective Hill testified at trial that his only knowledge of the transaction between appellants and Officer Walton was gleaned from his reading of Walton's official report. He also said that he did not see the transaction and thus had no personal knowledge of it. Therefore, even if Hill had wanted to testify about the transaction

itself at trial, his testimony would have been hearsay and properly excluded as incompetent. As a general rule, a person is incompetent to testify to a matter unless he or she has personal knowledge of it. *E.g.*, *O'Neil v. Bergan*, 452 A.2d 337, 343–344 (D.C.1982).

the light most favorable to the government, with due regard for the jury's right to weigh the evidence and assess credibility. *United States v. Hubbard,* 429 A.2d 1334, 1337–1338 (D.C.) (citing cases), *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981); *accord, e.g., Shelton v. United States,* 505 A.2d 767, 769 (D.C. 1986); *Byrd v. United States,* 388 A.2d 1225, 1229 (D.C.1978). "It is only where there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the trial court may properly take the case from the jury." *Williams v. United States,* 357 A.2d 865, 867 (D.C.1976) (citations omitted).

There was ample evidence to prove that Chambers possessed the three tinfoil packets of cocaine with the specific intent to distribute them. The government's theory was that Chambers and Hubbard jointly distributed the single package of cocaine to Officer Walton, and that the two of them, acting in concert, jointly possessed the three tinfoil packets seized from Chambers (and the vial as well) with the intent to distribute them to other willing buyers. The fact that the cocaine was in separate packages, rather than in one large mass, is evidence of an intent to distribute. *Shorter v. United States,* 506 A.2d 1133, 1135 (D.C.1986); *see Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970) (evidence showed that defendant Turner possessed 275 glassine bags of heroin; "[t]his evidence, without more, solidly established that Turner's heroin was packaged to supply individual demands"). The prosecutor correctly pointed out, however, that even if the jurors reject-

ed this theory and instead accepted Chambers' testimony, Chambers nevertheless admitted that he bought the three packets, possessed them when he was arrested, and planned to share them with Hubbard. Since such sharing would have been a distribution, Chambers' own testimony proved an intent to distribute.[10] Thus Chambers' intent to distribute was undisputed, and the evidence was more than sufficient to sustain his conviction.[11]

V

For the foregoing reasons appellant Chambers' convictions are affirmed, with the exception of his conviction of possession of drug paraphernalia, which is vacated. See note 1, *supra.* Appellant Hubbard's conviction is affirmed.

*Affirmed in part, vacated in part.*

---

**10.** "Distribution" under the statute does not require a sale or an exchange of money for drugs. A sharing, or even a gift, of a controlled substance is enough to constitute a distribution. As used in the "Controlled Substances" chapter of the Code, distribution means "the actual, constructive, or attempted transfer from one person to another person other than by administering or dispensing of a controlled substance...." D.C.Code § 33–501(9) (1988). Chambers' testimony that he planned to share the cocaine with Hubbard was a judicial admission of an intent to·distribute.

**11.** Chambers also contends that the trial court should have instructed the jury *sua sponte* as to

him, as it did with respect to Hubbard at the request of Hubbard's counsel, on the offense of simple possession as a lesser included offense of possession with intent to distribute. Because Chambers did not request an instruction on simple possession, he must demonstrate plain error in order to obtain reversal. *Watts v. United States, supra* note 8, 362 A.2d at 709; *see Allen v. United States,* 495 A.2d 1145, 1154 (D.C. 1985) (en banc). There was no basis in the evidence for such an instruction as to Chambers, *Lampkins v. United States,* 515 A.2d 428, 432–433 (D.C.1986), and thus no error; *a fortiori* there was no plain error.