**Robert WRIGHT, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 82–733.**

District of Columbia Court of Appeals.

Argued Nov. 8, 1988.
Decided Sept. 26, 1989.

Judith L. Gorfkle, appointed by this court, for appellant.

Glenn A. Fine, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, were on the brief, for appellee.

Before NEWMAN and FERREN, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

A jury convicted appellant of first degree burglary while armed, D.C. Code §§ 22–1801(a) (1981), 22–3202 (Supp.1988), three counts of armed robbery, *id.* §§ 22–2901 (1981), 22–3202, rape while armed, *id.* §§ 22–2801 (1981), 22–3202, sodomy, *id.* § 22–3502 (1981), forgery, *id.* § 22–1401, and uttering, *id.* § 22–1401. Appellant contests the convictions for rape while armed and sodomy contending that the trial

court should have granted his pretrial motion to dismiss those counts of the indictment and that the evidence did not support convictions on those counts. We agree with the first contention and reverse the convictions for rape and sodomy, leaving the remaining convictions standing.[1]

## I.

At trial, the government presented evidence that appellant and an unknown accomplice forced their way into the home of Alonzo Harris and his wife, Beverly Towns. Harris and a friend, James Irby, were entering the residence when appellant and his partner approached them from behind, put guns to their backs and ordered them inside. Once inside, the gunmen ordered the men to take off their clothes, took the personal belongings they had, including jewelry and a money order, and then led them upstairs into the master bedroom where Beverly Towns was watching television with her one-year old child.

Irby and Harris then were bound, gagged, and blindfolded and appellant, who seemed to be in charge throughout the incident, ordered them to lay down on the floor. Appellant then led Towns around the house, at gunpoint, picking up objects of apparent value. He eventually took Towns and the baby into the baby's bedroom and left them there.

Within minutes after appellant left, his partner entered the bedroom, closing the door behind him. He took Towns' jewelry and then motioned for her to take her clothes off. When Towns did not immediately do as he asked, appellant's partner pointed his gun at the baby's head and again told Towns to take off her clothes. Towns did as he ordered. Gun in hand, he forced Towns to perform oral sodomy and then raped her. After a few minutes of

intercourse, he pulled up his pants and left the room.

Towns began putting on her clothes as quickly as possible. As she was still zipping her pants, appellant came back into the room. He was upset because someone outside was blowing a car horn and he accused Towns of contacting some one. Appellant went outside for a few moments. When he returned, he told Towns not to call the police or tell anyone what had happened, that he knew where she lived, that he could come back at any time, and that someone would be watching her. He and his partner then left the house.

Harris and his wife Towns did not report the robbery immediately because Towns was frightened for herself and her baby. Towns went to California a few days after the incident and it was not until sometime after she left that her husband Harris reported the robbery to the police. He did not report the rape. Towns told her husband about the rape while she was in California, but only after he confronted her with it after he had found out about it from the one friend Towns had told. After Towns returned from California, she admitted to the police that she had been raped. At that time, she reported falsely that both gunmen had raped her.[2]

In the grand jury proceedings resulting in appellant's indictment, Detective Bobby Stanford testified that appellant's accomplice came into the baby's bedroom and raped and sodomized Towns, and, unknowingly, wrongfully testified that appellant came into the room while his accomplice was still in the act and Towns was still unclothed, and that appellant then raped and sodomized her. Detective Stanford was the only witness who presented evidence as to the rapes. The other facts that

1. The trial court sentenced appellant to 12 years to life on each of the burglary and robbery counts, concurrent with each other but consecutive to all other counts, 7 to 21 years on the rape count and 40 months to 10 years on the sodomy count, concurrent with each other but consecutive to all other counts, and 3 to 9 years on the forgery and uttering counts, concurrent with one another but consecutive to all other counts. Appellant contends that this sentence constitutes

multiple punishments for a single offense in violation of the Double Jeopardy Clause. This contention is without merit. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); D.C.Code § 23–112 (1981).

2. Towns testified that she had said both men had raped her in order to put pressure on appellant to reveal the identity of his accomplice.

the officer related to the grand jury were consistent with those presented at trial.[3]

The exact point at which the government discovered that Beverly Towns had lied about Wright raping her is not clear. The government states only that Towns did not tell the truth about the rape until the case was ready to go to trial.[4] The defense and the court learned of Towns' recantation on January 7, 1982, the day set for trial to begin. Before the jury venire was called into the courtroom, the trial judge asked if there were any preliminary matters. For some reason, the government prosecutor stated that she had none, although the fact is she apparently then knew of the false testimony. Not until voir dire questions had been discussed and the venire about to be brought into the courtroom did the prosecutor reveal that Towns' testimony would instead be that appellant did *not* physically rape or sodomize her, as she had falsely stated to the police, and that the government would proceed on a theory of aiding and abetting in respect to the rape. In other words, the government's crucial and only testimony before the grand jury on the rape by appellant had been false, as admittedly Towns had not been raped by appellant. Defense counsel requested a continuance on the grounds that he was not prepared to defend on the aiding and abetting theory and the court granted his request.

On March 12, 1982, defense counsel filed a motion to quash the fifth and sixth counts of the indictment charging rape while armed and sodomy.[5] The motion charged that those counts of the indictment were based totally upon hearsay evidence without any independent corroborating evidence and that "the evidence that was admitted is insufficient to support [the rape] charge." Counsel also filed a motion to produce the grand jury minutes.

Argument on the Motion to Quash and to Produce the Grand Jury Minutes was heard on March 16, 1982, immediately before voir dire of the jury. Both defense counsel and the trial judge recognized the underlying fact that the indictment on rape and sodomy was based on false testimony, although neither adequately explored that consideration during the argument on the motion to quash those counts of the indictment. Defense counsel stated,

I do wish to impress upon the court that I believe the motion and what I urged before the court yesterday ... as it relates to the conflicting statements ... with regard to, in one instance, that he participated in the rape, and another instance that he was only present, certainly is a compelling enough reason for us to take a look at the grand jury transcript.... *And I believe the compelling need here is one that goes directly to the question of whether or not the counts that relate to the rape and sodomy ought to be quashed.*

(Emphasis added.) Certainly, that statement sufficiently put before the trial court the issue now raised on appeal.

The court denied appellant's motion to quash, stating that the indictment was valid on its face, that hearsay evidence was

---

3. The only other witness to testify before the grand jury was Brian Booker, an employee of the bank at which appellant had tried to cash *the money order he had taken from Harris.*

4. Trial was originally set for October 27, 1980. Subsequent trial dates were set for May 14, 1981, September 24, 1981, October 26, 1981 and January 7, 1982. The trial actually began on March 16, 1982.

5. The fifth and sixth counts of the indictment read:
FIFTH COUNT
   On or about January 28, 1980, within the District of Columbia, Robert Wright and a per-

son whose identity is unknown to the Grand Jury, while armed with dangerous weapons, that is, pistols, had carnal knowledge of a female named Beverly Towns, forcibly and against her will. (Rape While Armed, in violation of 22 D.C.Code, Sections 2801, 3202)
SIXTH COUNT
   On or about January 28, 1980, within the District of Columbia, Robert Wright and a person whose identity is unknown to the Grand Jury, committed a certain unnatural and perverted sexual practice, with Beverly Towns. (Sodomy, in violation of 22 D.C.Code, Section 3502)

satisfactory,[6] and that "the Fifth Amendment, of course, doesn't require any preliminary hearing to determine the competency and adequacy of the evidence which was presented to the grand jury." After reviewing the grand jury minutes, the court concluded that appellant was entitled, for the purpose of impeachment, to those portions of the grand jury minutes in which Detective Stanford wrongfully testified that appellant had actually raped and sodomized Towns.

## II.

In denying appellant's motion to quash, the trial court reasoned that because the indictment was valid on its face, the court should not look beyond it to review the competency and the adequacy of the evidence presented to the grand jury, even though the court knew that the grand jury had relied entirely on false testimony. The trial court missed the point. While it is true that an indictment based on some false testimony may be valid as long as there is some competent evidence to sustain the charge, *United States v. Treadwell*, 594 F.Supp. 831, 835 (D.D.C.1984), *aff'd*, 245 U.S.App.D.C. 257, 760 F.2d 327 (1985), *cert. denied*, 474 U.S. 1064, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986); *United States v. Udziela*, 671 F.2d 995, 1001 (7th Cir.), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982); *Coppedge v. United States*, 114 U.S.App.D.C. 79, 83, 311 F.2d 128, 132 (1962), *cert. denied*, 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701 (1963), that is not the case which was presented to the trial court.

In this case, once the false testimony is excluded, there was no evidence whatsoever remaining before the grand jury to support an accusation that Wright raped Towns. The only rational conclusion, given the form of the indictment and the evidence

upon which we know it was based, is that the grand jury indicted appellant, not on the rape of Towns by appellant's accomplice, but on the rape of Towns by appellant himself. It thus seems clear that appellant was indicted for one rape, but convicted of another as an aider and abettor, a clear violation of the Grand Jury Clause of the Fifth Amendment.[7]

■ The Grand Jury Clause of the Fifth Amendment guarantees a right to be tried for infamous crimes only upon charges returned in a grand jury indictment, thus protecting against oppressive actions of the prosecutor or a court, which may alter the charge to fit the proof. *Gaither v. United States*, 134 U.S.App.D.C. 154, 159, 413 F.2d 1061, 1071 (1969); *Scutchings v. United States*, 509 A.2d 634, 636 (D.C.1986). In *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the Supreme Court reversed a conviction that *may* have been based on facts presented at trial but not presented to the grand jury. The Court stated that it could not know whether the grand jury would have included in its indictment a charge based on such facts.

In this case, we know that appellant's conviction rests upon facts crucially different from those presented to the grand jury. Although the government argues that the change in the government's theory represents only a narrowing of the indictment, which does not constitute an unconstitutional amendment to the indictment, *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985), we must disagree. The government's change in theory is actually a broadening of the indictment to include a completely different criminal act from the one for which appellant was indicted. Although the facts proven at trial are not contrary to the face of the indict-

---

6. *See Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

7. The cases which have held that a defendant may be charged as a principal but convicted as only an aider and abettor are inapposite here. In those cases, only one criminal act consistent with the face of the indictment had been presented to the grand jury. *See Barker v. Unit-*

*ed States*, 373 A.2d 1215, 1219 (D.C.1977); *United States v. Gordon*, 812 F.2d 965, 969 (5th Cir.1987), *cert. denied*, 483 U.S. 1009, 107 S.Ct. 3238, 97 L.Ed.2d 743 (1987). Here, the grand jury heard testimony as to two separate and distinct acts, the rape of Towns by the accomplice and the rape of Towns by appellant, but charged only one crime of rape.

ment, in this case, unlike in most cases, we know that the grand jury had before it a different criminal act than that for which appellant was convicted.

■ Appellant's convictions for rape while armed and sodomy must be reversed and the indictments on which they are based dismissed. In *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), the Supreme Court held that a petit jury's verdict of guilty rendered a violation of the FED.R.CRIM.P. 6(d) prohibition against simultaneous witnesses before the grand jury harmless beyond a reasonable doubt.[8] Whether the *Mechanik* harmless error analysis applies only to Rule 6(d) and other technical grand jury violations remains uncertain. *See Midland Asphalt Corporation v. United States,* —— U.S. ——, 109 S.Ct. 1494, 1497 n. 1, 1498, 103 L.Ed.2d 879 (1989) (noting disagreement among circuits as to scope of *Mechanik* but finding it unnecessary to resolve issue). Regardless of the scope, *Mechanik* is ultimately given, however, it cannot apply to the facts of this case.

This is not a case where an error or a procedural violation occurred before the grand jury which returned the indictment against appellant. It is a case where no grand jury ever returned an indictment against appellant for the crime for which he was convicted. To hold that conviction of that crime renders the absence of a grand jury indictment harmless would be to effectively eliminate the Fifth Amend-

ment's grand jury guarantee, to say nothing of its impact on the integrity of the criminal justice system in this jurisdiction.[9] Nor, if *Mechanik* does not apply, can we say that use of the false testimony before the grand jury was harmless under the standard of *Bank of Nova Scotia, supra* note 8. Our analysis of the charging decision in this case certainly has established that the false testimony "substantially influenced the grand jury's decision to indict" on the rape and sodomy charges. *Bank of Nova Scotia, supra,* 108 S.Ct. at 2374.[10]

■ We note finally that although we do not find prosecutorial misconduct in this case,[11] we also do not find that the prosecutor's conduct in this case was exemplary. When prosecutors discover before trial that material testimony presented to the grand jury is false, and they elect to attempt to proceed to trial on the indictment, it is incumbent upon them to immediately inform the trial court and defense counsel of the false testimony. *See United States v. Udziela, supra,* 671 F.2d at 1001 (when government discovers perjury before grand jury, it has option of seeking new indictment or appearing with defense counsel before the court for *in camera* inspection of minutes to determine if sufficient other evidence to support indictment). *Cf. United States v. Claiborne,* 765 F.2d 784, 791–92 (9th Cir.1985) (when perjured material testimony discovered prosecutor must inform defendant, trial court, and grand

---

**8.** In *Mechanik, supra,* the defendants did not move to dismiss the indictment until two weeks into trial. The Court specifically left unresolved "what remedy may be appropriate for a violation of Rule 6(d) that has affected the grand jury's charging decision and is brought to the attention of the trial court before the commencement of trial." 475 U.S. at 72, 106 S.Ct. at 942. *Cf. Bank of Nova Scotia v. United States,* —— U.S. ——, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988) (When court is asked to dismiss indictment prior to conclusion of trial, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations.") (citation omitted).

**9.** We do not believe that in *Mechanik* the Supreme Court has written a serious concern for

the integrity of the criminal justice system out of a court's proper consideration upon direct appeal of a conviction.

**10.** *Chambers v. United States,* 564 A.2d 26 (D.C. 1989), which this court recently affirmed relying on *Costello, supra* note 6, 350 U.S. 359, 76 S.Ct. 406, and *Mechanik,* is unlike the case now before us. In *Chambers,* the only challenge to the indictment was the sufficiency of the evidence before the grand jury. Unlike here, there were no allegations of false testimony and the defendant was convicted of the same crime for which he was indicted.

**11.** There is no suggestion that the government knowingly presented false testimony before the grand jury.

jury), *cert. denied,* 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986); *United States v. Guillette,* 547 F.2d 743, 752–53 (2d Cir. 1976) (when perjury discovered generally proper to seek new indictment), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977). Although we do not know exactly when the prosecutor discovered the false testimony in this case, it is evident that there was some delay in revealing it to the court and defense counsel.

We reverse appellant's convictions for rape while armed and sodomy. Appellant's other convictions are affirmed.[12]

*So ordered.*

12. We reject appellant's claim that the evidence that appellant aided and abetted the rape and sodomy of Towns was insufficient to support convictions of those crimes. Although the government's case was quite marginal, we conclude that the evidence was legally sufficient to support convictions of those crimes.