UNITED STATES of America,
Plaintiff–Appellee,

v.

Jesus JIMINEZ, Belkis Hernandez,
Ramon B. Rodriguez–Felipe,
Defendants–Appellants.

No. 91–9074.

United States Court of Appeals,
Eleventh Circuit.

Feb. 16, 1993.

Edward J. Coleman, III, Surrett, Walker,
Creson, Way, & Coleman, Augusta, GA
(court-appointed), for Jiminez.

Milton M. Avrett, III, Augusta, GA, for Hernandez.

Jerry M. Daniel, Waynesboro, GA, for Rodriguez–Felipe.

J. Michael Faulkner, Asst. U.S. Atty. (Lead Counsel), Augusta, GA, Mervyn Hamburg, U.S. Dept. of Justice, Washington, DC.

Before KRAVITCH and ANDERSON, Circuit Judges, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

This case comes before the court on Defendants/Appellants' claims of error in their conviction for conspiracy to distribute, and to possess with intent to distribute, cocaine hydrochloride, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1). Appellant Jiminez makes additional allegations of reversible error relating to his concurrent conviction for carrying a firearm in relation to drug trafficking activity in violation of 18 U.S.C. § 924(c) and for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(b). Having considered each Appellant's claims of error, we affirm the judgment of the district court.

*Background*

In an initial indictment, eight individuals were charged with a drug trafficking conspiracy occurring between April 9, 1986 and January 1, 1990. Five defendants were either dismissed from the case before trial or pled guilty so that, at the time of trial, only Defendants/Appellants Jesus Jiminez, Belkis Hernandez (Jiminez' wife) and Ramon Rodriguez-Felipe remained. A number of the originally indicted defendants testified for the government at trial.

According to the government's evidence at trial, Jiminez presided over a cocaine distribution operation from his home in Miami, Florida. In 1986, he was convicted of a drug trafficking offense in the Southern District of Florida. Hernandez actively assisted Jiminez in the smuggling operation and Rodriguez was Jiminez' largest customer.

In 1987 or 1988, Jiminez relocated to Harlem, Georgia, in violation of a parole order from Southern Florida. From Harlem, Jiminez directed the activities of several employees, who picked up quantities of cocaine from Miami, transported them to Georgia, and delivered them to customers in several states. The shipments were buried in canisters in Jiminez' yard until their sale or distribution, and a substantial portion of each shipment was set aside for Rodriquez. Payment for the cocaine was made occasionally by an exchange of weapons, but generally in cash, some of which was stored in Jiminez' trailer home in a slotted wooden box beneath a religious statue.

In June, 1988, Hernandez was arrested at the Six Flags Amusement Park in Jackson, New Jersey when she attempted to enter the park with one of Jiminez' weapons in her handbag.

On January 3, 1989, pursuant to an ongoing investigation of Jiminez' activities, Georgia police searched the homes of Rodriguez and Jiminez. They discovered several weapons in Rodriguez' home and, in Jiminez', found a handgun, cash, and evidence of narcotics activity. Jiminez and Rodriguez were arrested but released several days later. Rodriguez was arrested on a separate charge in 1990. Jiminez subsequently moved to New York City, again in violation of his parole in the Southern District of Florida. Jiminez was finally arrested for drug trafficking on April 8, 1991, in Camden, South Carolina.

Following their convictions in the Southern District of Georgia, all three appellants filed timely notice of appeal. They now claim that the trial judge committed reversible error in the following nine areas:

1). By refusing to bifurcate Jiminez' conspiracy count from the charge of possession of a weapon by a convicted felon;

2). By refusing to allow defense counsel to cross-examine the prosecutor about his

race-neutral explanation for the exercise of peremptory challenges;

3). By appointing an uncertified interpreter;

4). By allowing testimony concerning the presence of a religious statue in Jiminez' home and the role of the statue in the Santeria religion;

5). By excusing one of the jurors in mid-trial without prior notification of counsel;

6). By admitting proof of Hernandez' arrest for possession of a weapon;

7). By cautioning the jury three times not to be influenced by sympathy for the defendants and declining to issue an instruction to cure this repetition;

8). By finding that the conspiracy involved at least five kilograms of cocaine for purposes of calculating Jiminez' base offense level under the Federal Sentencing Guidelines;

9). By refusing to credit Jiminez with a two-level reduction under the sentencing guidelines for acceptance of responsibility.

Appellant Rodriguez makes the additional claim that his trial counsel was constitutionally ineffective.

### Discussion

We have examined each of Appellants' claims and we affirm, without discussion, the judgment of the district court with regard to issues three through nine.[1] We address only the first two issues presented.

### A. Severance

■ Appellant Jiminez contends that he was prejudiced by the introduction at trial of a prior narcotics conviction, evidence which was necessary to the charge of possession of a firearm by a convicted felon but, he claims, not relevant to the conspiracy count. Once before, we have found a

trial fundamentally unfair and a denial of due process where a state trial court failed to sever a similar pair of charges. In *Panzavecchia v. Wainwright,*[2] the trial court refused to sever two counts of murder from a count of possession of a firearm by a convicted felon. In its discussion of the prejudice which resulted from concurrent prosecution of the charges, the *Panzavecchia* court noted that the defendant's prior conviction for counterfeiting was repeatedly referred to at trial. The counterfeiting conviction was irrelevant to the murder charges and would not have been admitted in severed trial of those charges. In addition, the trial judge merely cautioned the jurors to consider the evidence pertaining to each charge separately and did not specifically instruct them to relate the counterfeiting conviction only to the firearm charge. The Court of Appeals found that these combined factors so prejudiced the defendant that he was denied due process under the Fourteenth Amendment.

■ Subsequent cases indicate that in the absence of circumstances indicating a high likelihood of prejudice, due process does not mandate severance of a charge requiring proof of a prior conviction from the other counts in a criminal indictment. In *Stone v. Green,*[3] the prosecution introduced evidence of a prior conviction for possession of marijuana in a trial for malice murder and unlawful possession of a firearm by a convicted felon. The Court of Appeals found no denial of due process. Critical to the court's decision was the fact that, in a separate malice murder trial, applicable state law would have permitted the prosecution to show felony murder even though it was not charged in the indictment. Thus, the defendant's possession of a firearm and his prior conviction had potential relevance as a foundation for felony murder. The prosecutorial latitude provided under state law made harmless

---

1. We do not address Rodriguez' claim of ineffective assistance of counsel on this direct appeal. An ineffective assistance claim is properly raised in a collateral attack on the conviction under 28 U.S.C. § 2255. *See United States v. Griffin,* 699 F.2d 1102, 1107 (11th Cir.1983).

2. 658 F.2d 337 (5th Cir. Unit B, 1981). The Eleventh Circuit has adopted as binding precedent the decisions of Unit B of the former Fifth Circuit. *Stein v. Reynolds Securities, Inc.* 667 F.2d 33 (11th Cir.1982).

3. 796 F.2d 1366 (11th Cir.1986).

the court's failure to limit the jury's consideration of the prior conviction because the conviction was relevant to the murder charge to the extent that murder included felony murder under Georgia law. The *Stone* court concluded that where other evidence of guilt is overwhelming, improper introduction of evidence of a prior conviction is not a "crucial, critical and highly significant" error warranting reversal.[4]

Other circuits are in accord. See *United States v. Silva*[5] (any error cured by limiting instruction); *United States v. Valentine*[6] (no prejudice because prior conviction not unduly emphasized at trial); *United States v. Busic*[7] (harmless error where prior crime evidence became relevant when defendant raised entrapment defense); *Procter v. Butler*[8] (no error in failure to sever robbery and murder counts where possibility of jury confusion speculative).

Having examined the prior conviction evidence in the context of Jiminez' trial, we are satisfied that the district judge committed no reversible error in refusing to sever the charges. First, we find no indication that Jiminez' prior criminal activity was unduly emphasized at trial. Second, his violation of parole from that earlier conviction was relevant to the conspiracy count. Had the conspiracy charge been separately tried, the government would have been entitled to introduce his parole violations and the conviction supporting them. Notwithstanding the relevance of this evidence to the conspiracy prosecution, the trial judge eliminated the possibility of reversible error by specifically instructing the jury to limit its consideration of the prior conviction to the firearms count. Given these safeguards, and the ample other evidence of guilt, the trial judge did not abuse his discretion by refusing to sever the charges.

**B.  *Peremptory Challenges***

■  Jiminez argues that the trial court erred by refusing to allow defense counsel to question the prosecutor in the course of a challenge to the exercise of peremptory challenges. We emphasize that the only issue before us is whether, under the facts of this case, it was reversible error for the trial judge to deny defense counsel an opportunity to cross-examine the prosecutor after the prosecutor had offered a race-neutral justification for each exercise of a peremptory challenge. Having reviewed this narrow question, we find no abuse of discretion.

■  A race-based exercise of peremptory challenges violates the Equal Protection Clause of the Fourteenth Amendment. Under *Batson v. Kentucky*,[9] once a criminal defendant establishes a prima facie case of purposeful discrimination based on the prosecutor's use of peremptories, the burden shifts to the government to offer a race-neutral explanation for the strikes. Once the government presents its justification, the trial judge determines, in light of all the facts and circumstances, whether the defendant has established the existence of purposeful discrimination.[10]

In the instant case, the prosecutor used five of his seven peremptory challenges to strike African American males. Defense counsel moved for a mistrial at the close of voir dire and, without finding that defense counsel had established a prima facie case of discrimination, the court instructed the prosecutor to explain each of the five disputed strikes. Defense counsel was permitted to respond to the prosecutor's explanation, and the court then discussed why it credited each of the proffered explanations and denied the motion for a mistrial.

■  Seven of the twelve jurors empanelled were African–Americans. While this

**4.** 796 F.2d at 1369, citing *Bryson v. Alabama,* 634 F.2d 862, 865 (5th Cir. Unit B 1981).

**5.** 745 F.2d 840 (4th Cir.), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1404, 84 L.Ed.2d 791 (1985).

**6.** 706 F.2d 282 (10th Cir.1983).

**7.** 587 F.2d 577 (3d Cir.1978), *rev'd on other grounds,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980).

**8.** 831 F.2d 1251 (5th Cir.), *cert. denied,* 488 U.S. 888, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988).

**9.** 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1980).

**10.** 476 U.S. at 97–98, 106 S.Ct. at 1723–24.

statistic does not negate the possibility of race discrimination, it is significant to the highly deferential review which we undertake in this case.[11] At oral argument on appeal, Jiminez' counsel was able to offer only one line of inquiry that would have added to the dialogue which took place: whether the prosecutor made a habit of preparing race-neutral explanations before trial in anticipation of a *Batson* challenge. Given the court's need to observe judicial economy, it was not an abuse of discretion to decline to conduct a mini-trial on the credibility of the prosecutor in this case.[12]

There may be a case in which the Fourteenth Amendment requires that defense counsel have an opportunity to question a prosecutor during a *Batson* challenge, but this case does not present that situation. The judgments of conviction are AFFIRMED.

---

11. *United States v. Allison*, 908 F.2d 1531, 1537 (11th Cir.) *cert. denied,* —— U.S. ——, 111 S.Ct. 1681, 114 L.Ed.2d 77 (1991) (unchallenged presence of African Americans on jury undercuts inference of impermissible discrimination that might arise solely from striking of other black prospective jurors).

12. In similar fashion, the Supreme Court has found it unnecessary for a trial judge to conduct a mini-trial on the issue of the defendant's guilt of a crime introduced under Fed.R.Evid. 404(b). *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (trial judge need not make a finding that government proved guilt of prior crime by a preponderance of the evidence before proceeding with trial).