Eric GOODALL, Appellant,

v.

UNITED STATES, Appellee.

No. 95–CF–634.

District of Columbia Court of Appeals.

Argued Oct. 23, 1996.
Decided Nov. 27, 1996.

Joseph Virgilio, appointed by the court, for appellant.

Thomas C. Black, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Douglas F. Gansler, and Barbara A. Grewe, Assistant United States Attorneys, were on the brief, for appellee.

Before FERREN, STEADMAN, and FARRELL, Associate Judges.

FERREN, Associate Judge:

After a jury trial, Eric Goodall was convicted on five weapons charges: (1) carrying a pistol without a license, D.C.Code § 22–3204(a) (1996 Repl.); (2) possession of an unregistered firearm, D.C.Code § 6–2311(a) (1995 Repl.); (3) unlawful possession of ammunition, D.C.Code § 6–2361(3); (4) possession of a prohibited weapon—machine gun, D.C.Code § 22–3214(a); and (5) unlawful possession of a pistol having been convicted of a felony, D.C.Code § 22–3203(a)(2). All the charges were attributable to the events of a single evening, when police officers spotted Goodall carrying a firearm that was recovered shortly after his arrest. Goodall challenges his conviction on two grounds. First, he argues that the trial court abused its discretion in failing to sever the fifth count of the indictment—the ex-felon count—from the other counts. Second, he maintains that the trial court abused its discretion by failing to grant a mistrial in response to allegedly improper statements by government counsel during closing argument. We conclude that the trial court took sufficient steps to safeguard against any prejudice flowing from the joint trial of the ex-felon count with the other charges. We also conclude that the prosecutorial statements challenged by Goodall were not improper; they were reasonable arguments from evidence in the record. We therefore affirm.

I.

At 1:00 a.m. on June 15, 1993, two Metropolitan Police officers spotted Goodall walking on Upshur Street, N.W., with a large gun tucked into his jeans and held in place with his right hand. At the sight of the officers approaching in a marked police car, Goodall ran into the driveway of an adjacent house on the corner of 8th and Upshur Streets and leaped over a fence into the backyard of the house. The officers saw him again trying to jump a second fence in order to leave the backyard and were able to apprehend him when he fell to the ground.

When arrested, Goodall no longer had possession of the gun the officers had seen him carrying. Police officers located the weapon, however, underneath the porch of the house Goodall had run by after jumping the fence. The magazine was not in the weapon but was found several feet away, as was a separate, single round of ammunition. One round of ammunition was jammed in the chamber of the weapon, rendering it inoperable. Although the gun could hold up to twenty-six rounds of ammunition—twenty-five in the magazine and one in the chamber—only twenty-one rounds were recovered: nineteen in the magazine, one on the ground next to the magazine, and the aforementioned round that was jammed in the chamber. The gun was modified so that it could only be fired safely if held in the left hand. One officer immediately recognized the weapon as the one he had seen Goodall carrying.

While Goodall was in police custody, gunfire rang out on Upshur Street from the direction the police officers had seen Goodall

leaving. Goodall began to cry and begged the officers not to let the shooters kill him.

Eric Burt, Goodall's cousin, testified on behalf of Goodall. His testimony verified that Burt and Goodall had been in the area of Goodall's arrest on that evening. However, Burt further testified that neither he nor Goodall had been armed. According to Burt, he and Goodall ran away from a volley of gunfire aimed in their direction by several unknown individuals who had been harassing them. Goodall was running down Upshur Street when they split up, and Burt was not present when Goodall encountered the police. Burt also testified that Goodall is left-handed.

## II.

■ Goodall contends that the trial court abused its discretion in denying the motion to sever the ex-felon count. We conclude that under the circumstances of this case—where (1) the government agreed to a stipulation, to be read to the jury, that Goodall had a prior felony conviction, but that did not reveal the nature of the offense, and where (2) the trial court twice read a cautionary instruction to the jury that it should not consider the felony conviction for any purpose other than its relevance to count five of the indictment—the court did not abuse its discretion in failing to grant Goodall's severance motion.

### A.

Before Goodall's first trial, which ended in a hung jury, he argued that he would be significantly prejudiced if the ex-felon count was tried together with the other weapons charges because of the danger the jury would use the prior conviction to infer propensity to engage in criminal conduct. Goodall suggested three alternatives that, to his satisfaction, would ameliorate the prejudice of joinder: (1) complete severance of the ex-felon count; (2) a bench trial only on the felony element of the ex-felon count, with the remaining elements of that count submitted to the jury; (3) a procedure whereby Goodall would "stipulate" to his guilt on the ex-felon count if the jury convicted him of the other charges. Government counsel did not agree

to any of these alternatives but offered to waive the government's right to a jury trial on the ex-felon count if Goodall agreed to have that entire count tried to the court simultaneously with the jury trial. Goodall did not accept the government's offer, and all counts were tried before the jury.

Before commencement of the second trial, Goodall renewed his motion for severance of the ex-felon count, reiterating his request for a bench trial of the felony element of the ex-felon count while the jury decided the other elements. The trial judge deferred ruling on the motion. Thereafter, during the second trial, Goodall's counsel stated for the first time that Goodall would agree to have the entire ex-felon count tried to the bench, as the government had proposed before the first trial. The government, however, opposed Goodall's request, arguing that it would be prejudiced by a midtrial removal of one count from the jury, and that the government could not be forced to submit to a bench trial. The trial judge then denied the motion to sever, citing the law of the case doctrine. The judge said that he would give a very strong cautionary instruction and would not permit the government to mention the felony conviction until the end of its case.

At the close of Goodall's case, Goodall's counsel asked the court to bifurcate the counts, submitting the ex-felon count to the jury only after it had reached a verdict on the first four counts. The judge rejected this proposal, noting the presumption that a jury will follow the court's instructions and therefore would consider the felony conviction only on the one element of the ex-felon count to which that conviction was relevant.

At the end of its case, the government read a stipulation to the jury that Goodall had been convicted of a felony before the incident in question. The stipulation did not reveal any detail about the nature of the felony. Immediately after the stipulation was read, the trial court gave the following cautionary instruction:

The last charge in this indictment[,] unlawful possession of a pistol[,] has a number of elements to that charge. One of

those elements is that the defendant had a prior felony conviction.

With the admission of this stipulation as evidence, the Government has proved that point. That stipulation was admitted for no other reason. It was only admitted to satisfy and prove that one element in the last charge [of] unlawful possession of evidence and for no other purpose.

You're not to consider that last stipulation for any other purpose. You're not to speculate or guess as to what the conviction was for.

Further, it is not in any way, that is the stipulation is not in any way to be considered by you as to whether or not it's more likely or not that the defendant was in possession of the gun that is charged in this case. That's the disputed element of this case.

At the request of Goodall's counsel, the trial court gave a further cautionary instruction during its final jury instructions:

Ladies and gentlemen, I'm also going to reiterate the instruction I gave you when the stipulation was announced regarding the fact that both parties, the Government and the defendant, had stipulated or agreed as a fact that the defendant, Mr. Goodall, had been convicted of a felony. That stipulation only applies to the last count, that one count in the last charge to prove that point that the defendant was convicted of a felony. You're not to—and it's not to be used in any other fashion relation to any other element in that count, in that count or any other counts.

In addition, you're not to speculate as to what that felony had been where Mr. Goodall had been convicted. It's not to be used, for instance, to show whether or not he was in possession of the gun. That's not to be used in that fashion.

### B.

Goodall argues that the trial court's denial of the severance motion—in light of its refusal to adopt Goodall's other suggestions to alleviate prejudice—was an abuse of discretion. Goodall does not contend that the

cases were improperly joined, for under Super. Ct.Crim. R. 8(a), joinder was clearly proper; all the counts arose out of the same act, namely Goodall's alleged possession of the weapon and ammunition. Goodall maintains, however, that the trial court should have severed the ex-felon count under Super Ct.Crim. R. 14 on the ground that he was prejudiced by the joinder because evidence of his prior felony conviction—implying propensity to commit crime—would not have otherwise been admissible in a trial on the first four counts of the indictment.

■ It appears that this court has never addressed the precise question raised by Goodall, namely the steps a trial court must take—if possible—to assure that a defendant is not unduly prejudiced by a joint trial of an ex-felon count with other charges. Numerous federal courts have addressed the issue, however, and we are also guided by our general severance jurisprudence, which teaches that the decision to sever "is within the sound discretion of the trial judge," *Feaster v. United States*, 631 A.2d 400, 412 (D.C.1993), and that this court will reverse only "upon a showing of the most compelling prejudice," *West v. United States*, 599 A.2d 788, 791 (D.C.1991). If the trial court takes steps to ameliorate the prejudice resulting from joinder, such as issuing cautionary instructions, reversal will be appropriate only when the defendant, nonetheless, did not receive a fair trial. *See Arnold v. United States*, 511 A.2d 399, 404 (D.C.1986); *Christian v. United States*, 394 A.2d 1 (D.C.1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979).

Our federal counterpart, the United States Court of Appeals for the District of Columbia Circuit, has had several occasions to review the joinder of a charge under the federal felon-in-possession statute, and we find these decisions to be quite instructive. In *United States v. Daniels*, 248 U.S.App. D.C. 198, 770 F.2d 1111 (1985), the court rejected a per se approach to such cases, concluding: "[W]e are unable to say that joinder in such a situation is *always* an abuse of discretion under Rule 14 [1] . . . ." *Id.* at 205, 770 F.2d

---

1. The federal version of Rule 14, FED.R.CRIM.P.

14, is basically identical to our Rule 14, varying

at 1118. Instead, the court affirmed the denial of a severance motion where "the jury was read a stipulation stating simply that [the defendant] had been convicted of an unspecified felony" and the trial judge instructed the jury on the limited use of the stipulation, both when the stipulation was read to the jury and during the court's final jury instructions. *Id.* at 201, 770 F.2d at 1114. The district court had recognized the danger of undue prejudice that can result from joinder of the ex-felon count and had "demonstrated a sufficiently scrupulous regard for the defendant's right to a fair trial." *Id.* at 205, 770 F.2d at 1118.[2]

In contrast, in *United States v. Dockery,* 293 U.S.App. D.C. 357, 955 F.2d 50 (1992), the federal Circuit Court revisited the joinder problem with an ex-felon count and this time found an abuse of discretion in denying the requested severance. There, the government refused to agree to a stipulation that the defendant had been convicted of a felony and instead introduced live testimony by the defendant's probation officer that the defendant had been convicted of an unspecified qualifying felony and ultimately sentenced to five years' probation. *See id.* at 358–59, 955 F.2d at 51–52. The government referred to the conviction six times during the trial. The trial judge, moreover, failed to instruct the jury that it could not use the felony conviction to infer propensity to commit the other charged crimes. *See id.* at 362, 955 F.2d at 55. Rather, the limiting instruction said only that the jury could not use the felony convic-

tion to resolve the other elements of the ex-felon count. *See id.* Finally, the evidence on the ex-felon weapons charge was "extraordinarily weak," and Dockery was ultimately acquitted of that charge. *Id.* at 363, 955 F.2d at 56. The combination of these factors caused the court to conclude that the trial judge "should have sought alternative means to protect both parties or forced the Government to choose between its proof and the joint trial." *Id.*

Goodall does not argue that we should adopt a per se rule that refusal to sever an ex-felon count is an abuse of discretion. *Cf. United States v. Busic,* 587 F.2d 577, 585 & n. 9 (3d Cir.1978) (suggesting in dicta that severance should be granted unless prior conviction would be inadmissible in separate trial of other counts), *rev'd on other grounds,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). Goodall maintains, however, that the facts of this case are closer to *Dockery* than to *Daniels* and that, under all the circumstances, the trial court abused its discretion by refusing to grant severance, especially in light of the several alternatives proposed by defendant. We cannot agree.

The circumstances of this case are nearly identical to those in *Daniels.* In both cases, the government and the defendant agreed to a stipulation that simply said the defendant had been convicted of a felony but did not disclose the nature of the felony. The D.C. Circuit has cautioned, quite correctly we think, that disclosure of the nature of the

---

only in slight changes of phrasing that are not relevant here.

**2.** Other circuits have taken a similar approach. *See United States v. Neal,* 36 F.3d 1190, 1207 (1st Cir.1994) (finding no abuse of discretion where government and defendant stipulated to prior felony conviction without revealing nature of offense), *petition for cert. filed,* No. 96–5380 (U.S. July 25, 1996); *United States v. Jiminez,* 983 F.2d 1020, 1023 (11th Cir.) (finding no abuse of discretion where prior conviction was not "unduly emphasized at trial" and court instructed jury to consider the conviction only on the firearms count), *cert. denied,* 510 U.S. 925, 114 S.Ct. 330, 126 L.Ed.2d 276 (1993); *United States v. Burgess,* 791 F.2d 676, 678–79 (9th Cir.1986) (finding no abuse of discretion where prior conviction was introduced through stipulation that revealed neither nature of the offense nor length of sentence and trial court gave three cautionary instructions

that the conviction could only be considered on the ex-felon count); *United States v. Silva,* 745 F.2d 840, 844 (4th Cir.1984) (noting that potential prejudicial effect of joining ex-felon count can be alleviated by proper cautionary instructions), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1404, 84 L.Ed.2d 791 (1985); *cf. United States v. Valentine,* 706 F.2d 282, 290–91 (10th Cir. 1983) (finding no unfair prejudice even where conviction was proved by live testimony that revealed the nature of the offense and court gave no specifically tailored limiting instructions). In a related context, the Supreme Court is currently considering whether the government can be forced to stipulate to the prior felony conviction where the defendant faces only the single ex-felon count. *See United States v. Old Chief,* 56 F.3d 75 (9th Cir.1995) (table), *cert. granted,* —— U.S. ——, 116 S.Ct. 907, 133 L.Ed.2d 840 (1996).

prior felony conviction would greatly increase the potential for prejudice resulting from joinder of the ex-felon count, especially if the charged count and prior conviction are similar in nature. *See United States v. Jones,* 314 U.S.App. D.C. 241, 245, 67 F.3d 320, 324 (1995) (finding abuse of discretion in allowing government to mention nature of prior offense even where defendant did not move for severance). The fact that the government agreed to a stipulation that did not disclose the nature of the prior felony and did not involve live testimony, as in *Jones* and *Dockery,* respectively, weighs heavily in favor of affirming the trial court's exercise of discretion in declining to grant the severance.

Also in the present case, the trial court read an excellent cautionary instruction which plainly informed the jury that it could not consider the felony conviction for "any other purpose" than to determine whether the government had proved the single element in the ex-felon count that concerned whether Goodall had, in fact, been previously convicted of a felony. The second cautionary instruction, given during final instructions to the jury, also made explicit that the felony conviction could not be used to establish guilt "on any other counts." Both cautionary instructions, which are quoted in full above, demonstrate that the trial court was well aware of the potential for prejudice, and that the court repeatedly emphasized to the jury that Goodall's prior felony conviction had been admitted in evidence for one purpose only, to prove the ex-felon element of the ex-felon count. One of the key factors leading to reversal in *Dockery* was the failure of the trial court's cautionary instructions to make clear that the jury could not use the felony conviction to infer a propensity to commit the other charged offense. *See Dockery,* 293 U.S.App. D.C. at 363, 955 F.2d at 56.

Finally, this case resembles *Daniels* far more than *Dockery* because of the government's complete lack of emphasis on the felony conviction. The prosecutor mentioned the felony conviction only twice: (1) when he read the stipulation and (2) during closing argument, when he mentioned very briefly that the government had proved the ex-felon element of the ex-felon count through the stipulation. By contrast, in *Dockery,* the government elicited direct testimony about defendant's prior conviction, mentioned the fact of the conviction on six different occasions, and twice referred to the fact of Dockery's prior conviction in connection with the irrelevant fact that Dockery had been on probation when arrested. *Dockery,* 293 U.S.App. D.C. at 363, 955 F.2d at 56. In the present case, the fact of the prior conviction was downplayed as much as humanly possible.

In sum, the trial court did a careful job in assuring that Goodall would suffer only the most minimal prejudice from the joinder of all the counts. In light of these conscientious efforts to minimize prejudice, and of the fact that the same incident and evidence underlay the various counts (so that separate trials would have caused a severe waste of judicial resources), we are satisfied that the court did not abuse its discretion in denying Goodall's motion to sever the ex-felon count.

Our conclusion is reenforced by the inappropriateness of several of Goodall's other suggestions. His first proposed alternative was a bench trial on the ex-felon element alone, with a jury trial of the remaining elements of the ex-felon count. The trial court noted that the D.C. Circuit had rejected that procedure in *United States v. Fennell,* 311 U.S.App. D.C. 332, 53 F.3d 1296 (1995), *rev'd in part on other grounds,* 316 U.S.App. D.C. 198, 77 F.3d 510 (1996), where that court noted:

> The jury must always be informed of the full nature, including each element, of the charged crime. *See United States v. Gilliam,* 994 F.2d 97, 101 (2d Cir.), *cert. denied,* 510 U.S. 927, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993). Absent the parties' agreement to try the [ex-felon] count to the bench, the district was thus obligated to inform the jury of the stipulation about the prior indictment.

*Id.* at 338, 53 F.3d at 1302 (other citations omitted). We are not aware of any precedent that would justify such a bifurcation of a criminal charge, trying certain elements to the bench and the remaining elements to the jury. *See United States v. Jacobs,* 44 F.3d 1219 (3d Cir.) (rejecting argument that under

federal felon-in-possession statute the element relating to the prior felony conviction could be separated from the other elements of that count), *cert. denied*, —— U.S. ——, 115 S.Ct. 1835, 131 L.Ed.2d 754 (1995); *United States v. Barker*, 1 F.3d 957 (9th Cir.1993) (granting government's petition for mandamus and preventing trial court from bifurcating only the ex-felon element of the ex-felon charge), *amended and reh'g denied*, 20 F.3d 365 (9th Cir.1994); *United States v. Collamore*, 868 F.2d 24 (1st Cir.1989) (same).

Goodall's other principal suggestion was his willingness to "stipulate" to his guilt on the ex-felon count if the jury returned a guilty verdict on the other counts. This alternative might have seriously prejudiced the government, however, since an agreement to "stipulate" to guilt would have been an unenforceable agreement to plead guilty,[3] and the government might have ended up having to try the case again. We therefore cannot say the trial judge abused his discretion in denying this alternative.

■ Goodall also agreed, midway through the trial, to a bench trial of the entire ex-felon count. While the trial court undoubtedly had the discretion to force the government to choose between a bench trial and severance, we find no abuse of discretion. First, in our assessment of whether the court abused its discretion, the critical question is not what other measures could have been taken to alleviate prejudice, but whether the steps the court actually took were sufficient to justify a joint trial.[4]

■ The government had offered a bench trial on the ex-felon count before the first trial, and the trial judge had suggested that approach again just before the second trial. On both occasions Goodall rejected the idea. Goodall only agreed to such a bench trial in the middle of the second trial, when he perceived it would be tactically advantageous to do so. Under these circumstances, the trial court did not abuse its discretion by refusing to force the government to elect, partway through trial, between taking the ex-felon count away from the jury or facing severance of that count entirely.[5]

### III.

Goodall challenges the trial court's denial of his motion for a mistrial made in response to allegedly improper statements by government counsel during closing arguments. Goodall specifically contends that five comments by the prosecutor—three during his initial closing argument and two during rebuttal argument—were improper in that they were not based on the evidence and invited the jury to speculate as to whether Goodall was guilty of more serious crimes in connection with the "gunfight."

■ In reviewing the trial court's decision to deny a mistrial when a defendant claims improper closing argument by the prosecutor, we must first determine whether the comments were, in fact, improper. *See Clements v. United States*, 669 A.2d 1271, 1275 (D.C.1995). In this case, we conclude that the prosecutor's arguments were based on rational inferences from the evidence adduced at trial. Accordingly, we have no reason to determine whether the cited prejudice to the defendant was so substantial as to require reversal. *See id.*

---

3. There is no procedure by which a defendant could be forced to plead guilty. *See* Super. Ct. Crim. R. 11(a)(1) ("If a defendant refuses to plead ... the Court shall enter a plea of not guilty."); Super. Ct.Crim. R. 11(d) ("The Court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement."). " 'A plea of guilty interposed as the result of coercion is not consistent with due process....' " *Byrd v. United States*, 377 A.2d 400, 404 (D.C.1977) (quoting *Euziere v. United States*, 249 F.2d 293, 294 (10th Cir.1957)).

4. Similarly, we also find no abuse of discretion in the trial court's decision not to bifurcate the jury's deliberations by submitting the first four counts to the jury, awaiting a verdict on those counts, and only then submitting the ex-felon count. While this procedure would be permissible, we see no reason to require it where the court has taken other appropriate steps to alleviate prejudice to the defendant.

5. We do not decide whether a trial court would abuse its discretion in denying severance if a defendant proposed, before trial, that an ex-felon count be tried to the bench and the government refused to accept the bench trial.

■ During initial closing argument, the government commented on Eric Burt's testimony for the defense and the relationship of that testimony to the evidence introduced by the government. Goodall objected at trial, and renews the objection here, to the italicized portion of the following argument:

> [A]s [defense] counsel and his own witness told you, you can't conceal this thing. . . . Why is he walking down the street? There's a lot of testimony about gunshots that night.
>
> . . . But even if you believe [Burt's] testimony when he runs up the alley, there's no more shots. *So Mr. Goodall, having gotten away from the gunfight, starts walking down here.*
>
> Now, he's got a jammed bullet in his gun so he can't shoot at anybody at that point. So he is running. He is gone. He doesn't want any part of this. But he's got a gun like this.

Basically, the government was offering its version of the events that ultimately led to Goodall's arrest. Eric Burt, Goodall's cousin, who testified on Goodall's behalf, maintained during his testimony that he and Goodall had been walking down the street when suddenly "15 to 20" gunshots were fired at them, and that they had fled because they were unarmed. To counter this testimony, the government noted that the gun seen in Goodall's possession held a bullet that was jammed in the chamber, rendering the weapon inoperable, and that this circumstance explained why Goodall fled the "gunfight."

Goodall argues that the use of the term "gunfight" necessarily implied that Goodall had fired the weapon before his arrest, and that there was "not one shred of evidence" to support the assertion that Goodall had been involved in a "gunfight." First, Goodall's own witness testified that numerous gunshots were fired at them and that bullets were "scraping the ground" around them and making a " 'whoosh' sound going past." It would not be unreasonable to characterize even Burt's testimony as describing a "gunfight." During his own closing argument, moreover, Goodall's counsel himself described the events as follows: "He's walking through or running through an area that's got people firing—number of people firing from different locations." However else one might describe these events, "gunfight" is hardly an inaccurate description.

Second, even if the prosecutor's reference to a "gunfight" is interpreted as implying that Goodall was engaged in returning gunfire, the statement was not improper. When the police found the weapon they had seen on Goodall, it had one round of ammunition jammed in the chamber, rendering the weapon inoperable. Furthermore, only twenty-one rounds of ammunition were recovered, whereas the weapon, fully loaded, held twenty-six bullets. Even setting aside the missing ammunition, it was reasonable for the prosecutor to argue that the reason Goodall fled the "gunfight" was that, at some point, his weapon could not be fired. When this missing ammunition is combined with Burt's testimony that Burt and Goodall fled in response to gunshots fired toward them, a jury reasonably could infer that the reason Burt and Goodall fled was that, after Goodall had fired several shots with his weapon, the weapon jammed and he was thus unarmed in the face of live gunfire. These arguments, moreover, were relevant to the government's case because they reenforced the police officers' testimony—that Goodall had been seen walking down the street with the gun tucked in his pants and had taken off after spotting the police officers—and detracted from Burt's testimony that neither Goodall nor Burt had been armed during the entire course of events. Under the circumstances, therefore, the prosecutor's reference to Goodall's leaving a "gunfight" was not improper closing argument.

Two other statements of the prosecutor were along lines similar to the closing argument detailed above. First, during his initial closing argument, the prosecutor commented: "If someone is shooting at you, you still are not allowed to have a gun and you're not allowed to bring the gun to the gunfight." In large part, this statement is merely an accurate explanation of the law of this jurisdiction. The law in the District of Columbia is quite clear that, even if someone is shooting at you, you are not allowed to carry a pistol without a license. *See* D.C.Code § 22–

3204(a) (1996 Repl.). To the extent that Goodall objects to characterization of the events as a "gunfight," this description was not improper, as we have discussed in detail above. The prosecutor properly sought to assure that the jury focused on whether Goodall had, in fact, possessed the gun. Consequently, the prosecutor reminded the jury that Goodall could not be exonerated of guilt of the charges even if someone was shooting at him throughout the entire evening.

 Second, during his rebuttal argument, the prosecutor commented:

When [the police officers] saw [Goodall], he wasn't shooting [the gun]. You don't have to decide whether he was shooting it. *You can make inferences to the fact that this [gun] holds 26 bullets and there was only 21 by the time they stopped him* .... He wasn't holding it like he was shooting it. Because if he were shooting it [with the right hand] ... it would rip his right hand off.

Goodall objects only to the italicized portion of this passage. The general thrust of the prosecutor's argument here is responsive to Goodall's contention that because he was left-handed, and the police officers claimed that he was holding the gun in his pants with his right hand, the police officers' testimony was not credible. The prosecution responded that he was not firing the gun when the police saw him with the weapon in his right hand and that it was unnecessary for the jury to decide whether he had previously fired the gun. The prosecutor noted, nonetheless, that Goodall was left-handed, the gun was modified so that the shooter could avoid serious injury only by firing it left-handed, and five rounds of ammunition were "missing" from the weapon. As discussed above, this line of reasoning supports the government's version of events and is reasonably based upon the evidence introduced both by the government and by Goodall during trial.

 The final two statements by the prosecutor that Goodall alleges were improper concerned the fact that shots were fired at Goodall even after he was taken into police custody. Specifically, Goodall objects to the following two statements: (1) "[T]hese guys were still pretty mad at him because they started shooting at him even while he was in the custody of the police, there were shots being fired"; and (2) "He's got a jammed gun, and we don't know why these guys are after him. ... We know people are shooting at him. You know these people are so mad they are shooting at him while the police have him." Goodall contends that there was not "one shred of evidence" that the person or persons shooting at Goodall were "mad" at him. We agree with the government that while there was no direct evidence of the shooters' state of mind, it was reasonable for the prosecutor to conclude that they were mad at Goodall from the fact that they were shooting at him. This inference from gunfire hardly strains the limits of credulity. Therefore, we cannot conclude that this aspect of the prosecutor's argument was improper.

\* \* \* \* \* \*

In conclusion, the trial court did not abuse its discretion in failing to sever the ex-felon count. In addition, the prosecutor's statements during closing arguments, challenged by Goodall on appeal, were not improper. Accordingly, the judgment appealed from is

*Affirmed.*