**Johnny B. WILLIAMS, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 11–CF–572, 12–CO–20.**

District of Columbia Court of Appeals.

Argued May 9, 2013.

Decided Sept. 12, 2013.

---

Kyle A. McGonigal, Washington, DC, for appellant.

Anne Y. Park, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, Elizabeth H. Danello, Jodi Steiger Lazarus, and Mary Anne Snow, Assistant United States Attorneys, were on the brief, for appellee.

Before THOMPSON and OBERLY, Associate Judges, and JOSEY–HERRING, Associate Judge, Superior Court of the District of Columbia *

JOSEY–HERRING, Associate Judge, Superior Court of the District of Columbia:

On January 10, 2011, a jury found appellant Johnny B. Williams guilty of unlawful possession of a firearm,[1] possession of an unregistered firearm,[2] and unlawful possession of ammunition.[3] Mr. Williams argues on appeal that: (1) the trial court committed plain error by admitting evidence that he had previously been convicted of a felony; and (2) the trial court erred in denying his motion to vacate his conviction and dismiss the indictment based on admittedly false testimony presented to the grand jury. For the reasons set forth below, we affirm the judgment of the trial court.

## I.

On January 12, 2010, members of the Narcotics and Special Investigations Division of the Metropolitan Police Department executed a search warrant of a one-bedroom apartment in southeast D.C. where Mr. Williams lived with his wife. The search warrant for the Williams' apartment was based on their alleged involvement in several burglaries in the state of Virginia, in which laptop computers, jewelry, and video game systems were stolen. The warrant excluded searches for firearms.[4] When the officers arrived on the scene and began to execute the search warrant, no one was home.

When Officer Robert Elliott searched the bedroom, he observed a shotgun case in the far corner of the bedroom closet. Officer Elliott testified at trial that although the shotgun case was partially zipped up, he could see the butt of a shotgun sticking out of the top. He recovered a Remington model 1100 .12–gauge shotgun from the case. Other materials were recovered from the apartment, including: (1) a small brown box[5] containing nineteen .12–gauge shotgun shells from the bottom drawer of a dresser; (2) mail with Mr. Williams' name and address from

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (2001).

1. D.C.Code § 22–4503(a)(1) (2001), *as amended by* § 219(b) of the Omnibus Public Safety and Justice Amendment Act of 2009.

2. D.C.Code § 7–2503.01 (2001)

3. D.C.Code § 7–2506.01(3) (2001)

4. Judge Wertheim, who signed the search warrant, struck the portions of the search warrant pertaining to "information belonging to the burglary victim" and "any contraband, such as firearms, and ammunition for firearms, and any other items that appear to have been stolen during burglaries."

5. The box containing the shotgun shells was labeled with the name "L.E. Jenkins" and an address different from Mr. Williams' address.

a nightstand; (3) mail with Mr. and Mrs. Williams' names and their address from a television stand; and (4) a black binder containing appellant's birth certificate and social security number found next to the sofa. The shotgun was later processed for latent fingerprints, but none were recovered; neither the shotgun shells nor the box in which they were found was processed for latent fingerprints.

After Officer Elliott discovered the shotgun and shotgun shells, Ms. Williams returned home and was arrested on an outstanding warrant; she was detained in the hallway outside the apartment. Shortly thereafter, Officer Jordan Katz arrested Mr. Williams on an outstanding warrant when he arrived at the apartment. When Mr. Williams asked Officer Katz what he was being charged with, Officer Katz told him that he was being arrested on a gun charge. Mr. Williams responded that shotguns were not illegal in the District of Columbia and that he had inherited the shotgun from his deceased father. Mr. Williams further stated that "[i]t's mine, it's not hers[.] ... [D]on't take her."

On January 27, 2010, Mr. Williams was indicted by the grand jury for unlawful possession of a firearm by a convicted felon, possession of an unregistered firearm, and unlawful possession of ammunition. Mr. Williams filed a pretrial motion to suppress the admission of the shotgun and the aforementioned statements, as well as other statements about the gun made at the police station following his arrest. In that motion, Mr. Williams contended that the search exceeded the scope of the warrant when Officer Elliott seized the shotgun since the search warrant did not include firearms or ammunition. At the subsequent motion hearing, the government presented evidence substantially identical to that stated above. The trial court denied the motion to suppress the shotgun based on the plain view doctrine. The trial judge also found that the statements made at the scene were spontaneous utterances not made in response to custodial interrogation. Moreover, the trial court found that the statements made at the police station were voluntary and made subject to a valid waiver of Mr. Williams' right to remain silent.

On the morning of trial, the government provided Mr. Williams' counsel with a copy of Detective Otis Washington's grand jury testimony, which contained several statements which were inconsistent and incorrect as compared to the evidence that the government expected to present at the suppression hearing and at trial.[6] Mr. Williams was convicted on all counts in the indictment, and was sentenced to three years of incarceration and three years of supervised release on the count of unlawful possession of a firearm by a felon; he was also sentenced to six months of incarceration on the offenses of unlawful possession of ammunition and possession of an unregistered firearm, to run concurrently. After the trial, Mr. Williams filed a motion to vacate his convictions and dismiss the indictment based on Detective Washington's false testimony before the grand jury. The trial court denied the motion on August 22, 2011, and this appeal followed.

## II.

Prior to trial, Mr. Williams' counsel[7] expressed concern that the jury would be

---

6. The parties appear to agree that Detective Washington's grand jury testimony does not constitute Jencks Act material or *Brady* evidence. *See* 18 U.S.C. § 3500; *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

7. Mr. Williams was appointed different counsel on appeal.

informed of Mr. Williams' prior felony conviction for robbery. Notwithstanding those concerns, the trial judge followed the procedure we previously approved in *Goodall v. United States,* 686 A.2d 178 (D.C. 1996), and permitted the prosecutor to read a stipulation[8] to the jury and to mention Mr. Williams' prior conviction during his summation in order to establish the elements of unlawful possession of a firearm by a convicted felon. The trial judge issued a cautionary instruction on each of these occasions. Mr. Williams' prior conviction was not referred to in either Mr. Williams' closing argument or the government's rebuttal argument.

On appeal, Mr. Williams contends that: (1) the trial judge erred when he permitted the government to inform the jury of his prior felony conviction; (2) he was substantially prejudiced when the jury was informed of his prior felony conviction; and (3) the trial court erred by failing to bifurcate the trial to ensure that he was not "unduly prejudiced by a joint trial of an ex-felon count with other charges." *Goodall,* 686 A.2d at 181 (D.C.1996).[9] We are unpersuaded by Mr. Williams' contentions.

■ The decision to sever "is within the sound discretion of the trial judge," *Feaster v. United States,* 631 A.2d 400, 412 (D.C.1993), and we will only reverse "upon a showing of the most compelling prejudice." *Goodall,* 686 A.2d at 181 (quoting *West v. United States,* 599 A.2d 788, 791 (D.C.1991)). Moreover, "[i]f the trial court takes steps to ameliorate the prejudice resulting from joinder, such as issuing cautionary instructions, reversal will be appropriate only when the defendant, nonetheless, did not receive a fair trial." *Goodall,* 686 A.2d at 181 (citations omitted). We review the trial judge's decision not to sever or bifurcate for abuse of discretion. *Id.*

■ In order for a jury to return a conviction for unlawful possession of a firearm by a convicted felon under D.C.Code § 22–4503(a)(1), the government must prove beyond a reasonable doubt that the defendant "has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year[.]" Accordingly, because "[t]he jury must always be informed of the full nature, including each element, of the charged crime," Mr. Williams' argument that the trial court should have required the government to prove the unlawful possession of a weapon charge without mention of his felony conviction is flawed. *Goodall,* 686 A.2d at 183 (quoting *United States v. Fennell,* 311 U.S.App.D.C. 332, 338, 53 F.3d 1296, 1302 (1995), *rev'd in part on other grounds on reh'g,* 316 U.S.App.D.C. 198, 77 F.3d 510 (1996)).

Mr. Williams' reliance on *Eady v. United States,* 44 A.3d 257 (D.C.2012), is misplaced. As we recently noted, "[i]n *Eady,* this court reversed because the defendant's prior convictions were presented to the jury despite the fact they 'played no part in the jury's consideration of the

---

8. The stipulation was worded as follows: "Prior to the charged incident the defendant Johnny B. Williams was convicted of a crime punishable by imprisonment for a term exceeding one year."

9. The government briefly argues that Mr. Williams waived this argument in light of his trial counsel's agreement with the trial judge's plan to handle the prior felon element

of the count of unauthorized possession of a firearm in compliance with the *Goodall* procedure. *See Brown v. United States,* 627 A.2d 499, 508 (D.C.1993) ("We have repeatedly held that a defendant may not take one position at trial and a contradictory position on appeal."). While this argument is well-taken, we need not reach it in light of our conclusion on the merits of this argument.

charged crimes, and w[ere] relevant only to sentencing.'" *Nero v. United States*, 73 A.3d 153, 157 (D.C.2013) (quoting *Eady*, 44 A.3d at 263); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime [ ... ] must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis and alteration added). Because the stipulation addressed an element of the unlawful possession of a firearm charge, the trial judge did not abuse his discretion in permitting the stipulation to be read to the jury or the prior felony conviction to be mentioned during closing arguments.

■ Moreover, Mr. Williams was not substantially prejudiced by the procedure followed by the trial court. The cautionary instructions in this case demonstrate that the "trial court was well aware of the potential for prejudice, and that the court repeatedly emphasized to the jury that [Mr. Williams'] prior felony conviction had been admitted in evidence for one purpose only, to prove the ex-felon element of the ex-felon count," to minimize that potential. *Goodall*, 686 A.2d at 183. Under the circumstances, any prejudice suffered by Mr. Williams was minimal, and we thereby find no abuse of discretion in the trial court's decision not to sever or bifurcate the trial.

### III.

■ Mr. Williams also contends that the trial court erred when it denied his motion to dismiss the indictment, which he asserts was tainted by the false testimony of Detective Anthony Washington.[10] However, we need not reach this argument, as the verdict at trial, which was based on accurate testimony, rendered harmless any error before the grand jury.

In *United States v. Mechanik*, the Supreme Court held that, although the government violated Fed.R.Crim.P. 6(d) when it permitted two witnesses to testify before the grand jury in tandem, that procedural error was rendered harmless under Fed. R.Crim.P. 52(a)[11] by a subsequent guilty verdict at trial. 475 U.S. 66, 72–73, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986). Effectively, the Supreme Court determined that the supervening jury verdict demonstrated *a fortiori* that probable cause existed. *Id.* at 67, 106 S.Ct. 938.[12] In this case, too, "[m]easured by the petit jury's verdict ... any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Id.* at 70, 106 S.Ct. 938. *See also (Phillip) Williams v. United States*, 757 A.2d 100, 106 & n. 6 (D.C.2000) (noting that the "testimony that the anonymous expert gave before the grand jury presumably 'covered the identical subject matter' as the testimony that Detective Smith gave at trial, which was subject to cross-examination and full evaluation by the petit jury").[13, 14]

■ Moreover, several other courts have held that *Mechanik* applies to allega-

---

10. Specifically, Detective Washington testified that: (1) the police had information that there was a firearm in the unit, that the firearm belonged to Mr. Williams, and that this information was obtained from a reputable source, an undercover officer, or investigation; (2) a Superior Court judge signed a search warrant authorizing a search for the weapon; (3) Mr. Williams' wife was not at home during the search; and (4) Mr. Williams did not make any statements about the weapon. Each of these statements was inaccurate.

11. The court notes that Fed.R.Crim.P. 6(d) and 52 are substantially identical to the local rules of the same number.

12. In effect, a finding of guilt beyond a reasonable doubt negates any doubt that there was probable cause of guilt. *See id.* at 70.

13. We reach this conclusion notwithstanding our decision in *Wright v. United States*, 564 A.2d 734 (D.C.1989), where we declined to apply *Mechanik*. *Mechanik* holds that errors

tions of false or inaccurate testimony before the grand jury where the *petit* jury convicted the defendant. *See United States v. Huggins*, 392 Fed.Appx. 50, 67 (3d Cir.2010) (noting that, if the "government did engage in misconduct before the grand jury, the petit jury's guilty verdict rendered any prosecutorial misconduct ... harmless." (quoting *United States v. Console*, 13 F.3d 641, 672 (3d Cir.1993))); *United States v. Wilson*, 565 F.3d 1059, 1070 (8th Cir.2009) (holding that even if the prosecution "present[ed] the victim's false testimony to the grand jury" the challenge to the "indictment is without merit because ... the petit jury's guilty verdict rendered those errors harmless"); *United States v. Lombardozzi*, 491 F.3d 61, 79–80 (2d Cir.2007) (holding that "all the discrepancies between Agent Bryceland's grand jury testimony and the evidence at trial were submitted to the petit jury which found Lombardozzi guilty beyond a reasonable doubt" and further that it is "well settled that a guilty verdict at trial" "remedies any possible defects in the grand jury indictment"); *United States v. Vincent*, 416 F.3d 593, 600–01 (7th Cir. 2005) (rejecting appellant's argument that the indictment should be dismissed because the "government secured [it] by presenting evidence to the grand jury that the prosecution knew to be false" because appellant showed no prejudice, and even if there were errors, the "petit jury's subsequent conviction of [him] rendered these errors harmless beyond a reasonable doubt"); *United States v. Lopez–Gutier-rez*, 83 F.3d 1235, 1245–46 (10th Cir.1996) (holding that the special agent's inaccurate testimony to the grand jury regarding defendant's prior convictions was "not intended to unfairly sway the jury or undermine [the defendant's] defense" as the special agent was "merely mistaken, and the statements were at most technically inaccurate and had the potential of affecting only the grand jury's finding of probable cause," and that since the *petit* jury convicted the defendant, "the question as to whether there was probable cause to bring an indictment is moot"). We find no reason to differ from the holdings of these courts, and conclude that even admittedly false testimony, where presented to the grand jury without willful misconduct or other extenuating circumstances, is rendered harmless by an eventual *petit* jury verdict.

However, although we conclude that any prejudice suffered by Mr. Williams due to Detective Washington's false testimony was rendered harmless by the supervening guilty verdict, we do not today establish a *per se* rule against the dismissal of indictments where the *petit* jury later convicted the defendant.[15] Other courts have not foreclosed the dismissal of indictments in the face of convictions in light of the willful use of perjured testimony, systemic prosecutorial misconduct, or other "defect[s] so fundamental that [they] caus[e] the grand jury no longer to be a grand jury." *United States v. Soto–Beniquez*, 356 F.3d 1, 25 (1st Cir.2003) (internal quotation marks

---

before the grand jury are rendered harmless by a superseding jury verdict, while we reversed in *Wright* because the appellant was convicted of a charge on which he was never indicted. *Id.* at 738.

**14.** The practice of having an officer with no involvement in the case testify before the grand jury greatly increases the likelihood of producing inaccurate testimony. *See United*

*States v. Brito*, 907 F.2d 392, 395 (2d Cir. 1990).

**15.** Of course, our decision does not in any way bar the trial court from exercising its supervisory authority over the grand jury proceedings where a motion to dismiss the indictment based on false testimony is made prior to the commencement of the trial.

omitted); *see also, e.g., Bank of Nova Scotia v. United States,* 487 U.S. 250, 256, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (noting that an indictment may be dismissed where there is a "history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process"); *United States v. Fountain,* 840 F.2d 509, 513 (7th Cir.1988) ("This circuit has reserved the possibility that knowing use of perjured testimony, amounting to the creation of trumped-up charges, might justify the dismissal of an indictment."). However, we leave the decision as to the circumstances under which the dismissal of an indictment may be appropriate to future cases where the issues are directly raised.

## VI.

Accordingly, the judgment of the trial court is

*Affirmed.*